May it please the Court, Dimitri DeFekis for Petitioner Jose Salgado, and I would like to reserve three minutes for rebuttal. Okay. Do you want me to remind you? Yes. Okay. Please proceed. This case is about a prior conviction and the well-established rules that the government has to follow in order to prove that such a conviction exists. The BIA found that Mr. Salgado was not of good moral character under 8 U.S. Code 1101. Under 1101F3, the definition of good moral character is that the existence of a controlled substance offense of which a person either was convicted or admits the commission renders him not of good moral character under the INA. The statute provides only two options, proving a conviction or admitting the commission of an offense. The government did not prove that Mr. Salgado was convicted of a controlled substance offense under the immigration laws, and the BIA was wrong in holding that he did, because the record does not conclusively and reliably demonstrate the existence of such an offense. Counsel, do you believe that Snellenberger has any impact on this case? I think that if you look at the Court's recent decision in Snellenberger, the practical effect of Snellenberger isn't to depart in any way from the Court's previous decision in Tocatli. Tocatli, which follows the United States Supreme Court in Taylor and Shepard, says that there's a specified group of documents, which include plea transcripts, the charging document, a copy of the judgment, which can be used under the modified categorical approach. If you trace ---- I'm concerned about ---- I appreciate your advocacy on this, but I was actually on the Snellenberger panel, as you may know, and wrote a dissent about that because I thought the majority got it wrong. But the majority pretty clearly indicated that a minute order, which did not contain great details, simply confirmed what the charging document had said was sufficient. Now, in this case, if you look at what was before the IJ, you find a number of things. First of all, you have the charging document. I gather you don't question that. It's really more of the subsequent event. And there you have a certified plea and sentencing, according to the document that I have here, which was, I think it's Bates Stamp 411. I'm not sure what it is in the excerpts or record. But it indicated that the defendant was present in court, represented by counsel, or was an interpreter, and he waived arraignment for the judgment, states there's no legal cause why the sentence should not be pronounced, ordered the following judgment, and so on. It's your contention that that does not satisfy the combination of the charging document and that certified plea and sentencing document does not satisfy the Taylor modified categorical approach? Yes, Your Honor. Because if you look at the document at 411, it states that the case was filed on November 22nd, 1999, which is almost 13 months after the date on the charging document, which is October 20th, for an arrest on October 18th of 1999. And so if you look at that incredibly long gap, it raises questions. Why did it take a year to get to that point? And the government hasn't provided any records to fill in that gap. And the point that I was trying to make about Snellenberger is that if you look at this Court's cases, Snellenberger relies on language in Taylor about and Shepard about reliable judicial records. Are you raising this for the first time, this issue of the gap? I don't remember seeing anything in the pleadings about a gap argument. No, Your Honor. It is in our brief. Okay. No, I believe you. That's one of our biggest problems is that, you know, you have a charging document that says one thing, and then there's an incredibly long gap. What difference does that make? Let's say that someone is charged with a criminal offense and they're on the lam and they can't find them. Are you suggesting that the fact that the officers were unable to apprehend the suspect for, say, two years would vitiate any use of the modified categorical approach? I'm saying that the fact that we're sitting here speculating is the problem. I think that the standard, it's not necessarily. If the government had provided records and said this is why there is that gap, so that we were left guessing. I guess maybe more to the point, Taylor permits the modified categorical analysis as a way to determine whether someone has been convicted, charged, et cetera, of a previous crime for purposes of future purposes. In this case, it's immigration, but it may be whether there's a sentence enhancement or something like that. And there's nothing in Taylor about a gap, is there? Not specifically about a gap, but I think Taylor and Shepard and Tocatli are all very clear about the purpose of following this approach, of following these rules. And that's because an immigration proceeding is not supposed to be a fact-finding mission when it comes to a prior conviction. An immigration proceeding is supposed to be, to use the Court's language, a streamlined adjudication. It's not supposed to be. Kennedy. What about the second part of the statute that speaks then of an admission? Here at the time of, let me get my transcript out here. At the time of the hearing before the immigration officer, the immigration judge said on February 14, 2000, you were convicted in the Superior Court of California County of Los Angeles for the offense of possession of controlled substances, cocaine, and then he went on to say, in violation of 11350A California Health and Safety Code, do you admit or deny number five? And he said, I accept, I admit, but I was already sentenced, and so on. Doesn't that satisfy the second prong of the statute, which permits a confession of that? It doesn't, for a couple of reasons. If you look at this Court's decision in Huerta-Guevara v. Ashcroft, it's very instructive because almost the same thing happened. The alien made concessions on the record, and then the government proceeded to produce evidence of a conviction. And this Court said that the government didn't rest on the alien statements. It proceeded to introduce evidence of a conviction, and therefore, it should be held to producing sufficient evidence under the modified categorical approach. At the same time, if you look at the kinds of statements that the BIA credits, there is incredibly well-established law about what a knowing and voluntary waiver is. And here Mr. Salgado never admitted that he did anything. He responded about a question about what the Court did to him. And the case law, going all the way back to in the matter of K, which is a BIA case which sets the standard, makes it very clear what the alien must understand and how he must admit to specific conduct, and that he must do it knowingly. Didn't the judge specifically state that it was for possession of cocaine? The judge asked if there was a conviction. He didn't ask. He went more than that. He didn't just say there was a conviction. He said you were convicted for the offense of possession of controlled substances cocaine. And then he went on to state the section. If he just said section and he didn't say what it was, that might be a little different issue. But isn't it sophistry to suggest that what Mr. Salgado said to the judge did not confess that he had committed that crime? No, Your Honor, because if you look at cases like Tocatli or like Sandoval Lua v. Gonzales where the alien admitted specifically that he took eight ounces of methamphetamine and brought it from one friend to another friend for $450, and yet the Ninth Circuit didn't credit that as an admission, I think that if you look at the kinds of cases in which admissions are credited and you look at what happened in this case, they're significantly different. And now I'll reserve the rest of my time. Thank you. All right. Very good. We'll hear your rebuttal later, and we'll hear now from the government. Good morning, members of the Court. I'm Paul Fiorina for the Respondent. To pick up on Judge Smith, your discussion with counsel, the government agrees that Snellenberger does affect this case. We feel that the documents in the record, the combination of the charging document in conjunction with the minute orders that follow, conclusively establishes that the petitioner was convicted of possessing cocaine. And I don't think that there's anybody that really doubts that he was, in fact, convicted of possessing cocaine. What is the government's position on the argument made by the appellant about confession? And if I understand it correctly, they're basically saying that his admitting a conviction is different than what the statute requires. What's your position on that? In order to give that argument any credence, you'd essentially have to go behind the conviction and find out that his plea was not voluntary or knowing. We're stuck with the fact that he was convicted. And it's long-established case law that when you have an effect of a conviction, the court can't collaterally attack the underlying facts of the conviction. Does it make any difference, as alleged by the appellants, I think they contend that Mr. Salgado was at this point, I may be wrong about this, but as I recall, at some point they said he was pro se in jail and there was a translator involved. Am I getting the time sequence correct? Yes. When he appeared before the immigration judge and when he made that admission, he was pro se. But the simple fact that they were asking him was were you convicted of possessing cocaine. Right. And that fact, we can presume that he knew what happened to him, that he knew that he was convicted of something and that he possessed cocaine. The discussion between the immigration judge and the petitioner on page 80 of the record conclusively establishes that. There's really, the facts in this record really leave no doubt whatsoever that he was convicted of possessing cocaine. And for that reason, he is removable as charged. Because it's a crime of moral turpitude, right? Yeah. Or by good character, I guess. Because the statute precludes him from establishing good moral character for the purposes of suspension of deportation. So we think that the record is clear on that. Unless the court has any further questions. I'm just wondering why he wasn't inspected when he came in with his mother. I don't have an answer for you, Your Honor, on that question. If he had been, the rule would have been entirely different today. It could have been. I guess for the purposes of establishing eligibility under NACARA. Because she was allowed to come in. And then the proceedings for her were terminated, so they terminated for all the kids, too. Yes. I don't have an answer for you on that, Your Honor. Okay. Judge Nilsen, do you have any questions for counsel? No, I don't. Very good. Thank you. Thank you. We'll hear rebuttal. Just two, three quick points. First of all, the government in their briefs, and an argument again here, consistently collapse the standard. They consistently say admit the conviction. And that's because they have neither a valid conviction or a valid admission. And so they're trying to collapse the two in order to say that there's evidence of the movement. May I ask you this, counsel? With respect to the statute, do you have any cases that, if you will, buttress your position that a statement by the appellant in this case is inadequate to satisfy what the statute requires? I would point the Court to originally in the matter of K. Now, matter of K is a BIA decision, is it not? But they state the standard for knowing and voluntary admission. Uh-huh. I would also point you to Enri Rodriguez-Segovia, which we cite in our cases, which is also. But also I would point you to Mendoza v. McCasey in this case, in which also deals with admission. I would also like to address one other point that counsel made. He said that we'd have to go behind the record to see if the plea was knowing and voluntary. That's not what has to happen. It's not whether the plea is knowing and voluntary. It's whether the admission for immigration purposes is knowing and voluntary. So that's not necessary. One other point that I'd like to make, one of the problems in this case, and truly the remedy that we're seeking, is Mr. Salgado was not allowed to put on evidence. He was deprived of process. So if you ask why he wasn't inspected and why certain things happened the way they happened, at the time he had people in the courtroom who were going to testify for him, including his mother, and he was not allowed to put them on. So really the remedy that we're seeking in this case is simply giving him a hearing that he was entitled to. You're talking about in the I.J.'s courtroom? Yes. His mother was sitting in the I.J.'s courtroom asking to be put on, and the I.J. wouldn't allow it. And she has actually since, I believe, passed away. So the main remedy that we're seeking here is to allow him the process that he should have been given in the first place. Okay. That's all. You're participating in our program where people who do pro bono work help out. Is that right? Yes, Your Honor. You've done an excellent job. And I must say we fight hard. Well, you're with MOFO, right? Yes, I am. I saw one of your partners last night told her that we were going to be hearing from you, and we thank your law firm and others who participate in this program. Regardless of the merits of the cases that you argue, it does a great service. Absolutely. And hopefully gives you all good experience. There's nothing but upside from my perspective as far as I'm concerned. It's a wonderful opportunity. We thank you and your firm for your argument, thank the government for its argument, and the case of Salgado v. Holder is submitted. And since that is our only case for argument today, the Court now stands in recess.
judges: Nelson T. G., Smith M., King